NORTHERN PACIFIC RAILROAD COMPANY, Respondent, *v.* RAYMOND, Treasurer of the Territory of Dakota, Appellant.

1. Taxation—Railroads — Gross Earnings — Statute — Constitutionality.

Chapter 99, Laws 1883, requiring railroad companies to pay a certain per cent. of all of their gross earnings in lieu of other taxes, is unconstitutional in so far as it taxes interstate commerce; that is, earnings beginning without, or terminating without, the territory.

2. Taxes—Payment—Application.

Section 1, c. 99, Laws 1883, provided that railroad companies, in lieu of other taxes, shall pay to the territorial treasurer a certain per cent. of all of their gross earnings, payable, "one-half on or before the 15th day of February, and one-half on or before the 15th day of August, in each year." On account of taxes for the year in controversy, the respondent, on the 5th of March, paid appellant a sum equal to more than three times the taxes due (or that could be constitutionally collected) for that year. *Held*, in an action to restrain the treasurer from selling property for the August installment, that the March payment operated to discharge the taxes for that year.

(Argued May, 12, 1888; affirmed May 25; opinion filed October 13, 1888.)

Appeal from the district court of Cass county; Hon. W. B. McConnell, Judge.

*Chas. F. Templeton*, Atty. Gen., for appellant.

On or before February 1, 1887, as required by law, the plaintiff filed with the defendant a statement of its gross earnings arising from the operation of its roads in this territory for the year 1886. It did not appear what portion of such earnings

arose from the operation of said roads in transporting goods or passengers through the territory, or from points without to points within, or from points within to points without, the territory. It was not until the amended complaint was served that defendant had or could have any knowledge of the separate amounts received for local and interstate transportation.

In view of recent decisions of the supreme court of the United States, particularly *Fargo* v. *Michigan*, 121 U. S. 230, 7 Sup. Ct. Rep. 857, and *Philadelphia Steam-Ship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. Rep. 1118, it must be conceded that the tax on so much of the gross earnings as arose from transportation not local, (within the territory,) is a tax upon interstate commerce, and therefore unconstitutional.

Upon the face of the statements filed the tax amounted to $76,196.62, the first half of which became due and payable February 15, 1887, and was voluntarily paid by plaintiff, March 5, 1887; the last half which became due and payable August 15, 1887, has not been paid, and defendant was proceeding to collect the same by distress when enjoined by the court in this proceeding.

The judgment of the court below, so far as it declares the amount due the territory August 15, 1887, fully paid, is clearly erroneous. There is no allegation in the complaint that it has been paid. The demurrer admits no such fact. True, there is an allegation that plaintiff, on the 5th of March, 1887, paid into the territorial treasury $38,095.31, but it is not alleged that it was made in payment of the amount due for any particular year, or part of a year, and the court cannot presume that it was intended to satisfy the tax which defendant is now seeking to collect. In fact, the amount paid by plaintiff March 5, 1887, was paid in satisfaction of the installment which became due February 15, 1887, and was the exact amount of such installment, as appeared by the voluntary statement made by plaintiff. Up to and including that date it had been the uniform practice and custom of plaintiff to pay a percentage upon all the gross earnings of the corporation within the territory, whether local

or otherwise, and such is the plain spirit and intent of the law.

At the date of the passage of the act, such a law, in its entire scope, was recognized as valid by the supreme court of the United States.    See case of *State Tax on Railway Gross Receipts*, 15 Wall. 284, which has been limited, if not entirely overruled, by *Philadelphia Steam-Ship Co.* v. *Pennsylvania*, 122 U. S. 326, 7 Sup. Ct. Rep. 1118.

The payment of the first installment was entirely voluntary on the part of plaintiff; there was neither fraud, duress, or mistake of fact.    Taxes paid under such circumstances cannot be recovered back.    *Powell* v. *St. Croix Co.*, 46 Wis. 210 ; *Shane* v. *St. Paul*, 26 Minn. 543, 6 N. W. Rep. 349; *Lamborn* v. *Co. Com'rs*, 97 U. S. 181; *Railroad Co.* v. *Com'rs*, 98 U. S. 541.

If no part of the amount then paid can be recovered back, it necessarily follows that no part of it can be set off against taxes subsequently due.

*Ball, Wallin & Smith, J. C. Bullitt, Jr.*, *(Jas. McNaught*, of counsel,) for respondent.

Appellant concedes that the tax for the year 1886 amounted to only $12,000.    He further concedes that the respondent paid, on account of taxes for that year, the sum of $38,095.31.    Do not these two admitted facts dispose of the case?

The appellant's argument is that only half of the tax was due when the payment was made, and such payment operated only as a satisfaction of such half, leaving the remaining $6,000 unpaid.    This view is erroneous.    The statute provides that the payments shall be made, one-half on or before the 15th day of February, and one-half on or before the 15th day of August, in each year.    In other words, the exact times of payment were left to the respondent's convenience and choice; the sole condition being that half the amount of the tax should be paid not later than February 15th, and the remainder not later than August 15th; and, instead of the statute's prohibiting the payments before those dates, it expressly provided that they might be made prior thereto, if the respondent so desired.

The provision that the installments should be paid on or before the dates specified was intended for the benefit of railroad companies, and not the territory.

"A party may waive any provision, either of a contract or of a statute, intended for his benefit." *Shutte* v. *Thompson*, 15 Wall. 151, 159; *Bowen* v. *Aubrey*, 22 Cal. 566, 572; *People* v. *Robinson*, 46 Cal. 96.

FRANCIS, J. This appeal is from an order overruling the demurrer to the amended complaint and the judgment for plaintiff.

A full statement of the case, necessary for a proper conception of the points involved therein, is found in the pleadings and record, as follows:

## "AMENDED COMPLAINT.

"I. That said plaintiff is now, and at all times hereinafter named was, a corporation duly organized and existing under and by virtue of that certain act of congress approved July 2, 1864, entitled 'An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route,' and under those certain acts and joint resolutions of congress relating to the same subject-matter.

"II. That under and by virtue of the powers conferred on it by said acts and joint resolutions, said plaintiff has constructed, and owns, and operates, divers railroads operated by steam-power in the territory of Dakota, to-wit, that certain railroad known as the 'Northern Pacific Railroad,' which has been operated for more than five years prior to January 1, 1887; that certain railroad, known as the 'Northern Pacific, Fergus & Black Hills Railroad,' which has been operated for a period of less than five years prior to January 1, 1887; that certain railroad, known as the 'Fargo & Southwestern Railroad,' which has been operated for a period of less than five years prior to January 1, 1887; that certain railroad, known as 'Sanborn, Cooperstown & Turtle Moun-

tain Railroad,' which has been operated for a period of less than five years prior to January 1, 1887; and that certain railroad known as the 'James River Valley Railroad,' which has been operated for less than five years prior to January 1, 1887.

"III. Heretofore, to-wit, on the 9th day of·March, A.D. 1883, the legislature of the territory of Dakota enacted a certain act entitled ' An act to provide for the levy and collection of taxes upon the property of railroad companies in this territory,' which, among other things, provided as follows, to-wit:

" ' Section 1. (*Percentage of Gross Earnings to be Paid in Lieu of Other Taxes.*)   In lieu of all other taxes upon any railroads, except railroads operated by horse-power, within this territory, or upon the equipment, appurtenances, or appendages thereof, or upon any other property situated in this territory, belonging to the corporation owning or operating such railroads, or upon the capital stock or business transaction of such railroad company, there shall hereafter be paid into the treasury of this territory a percentage of all gross earnings of the corporation owning or operating such railroad arising from the operation of such railroad as shall be situated within this territory, as hereinafter stated; that is to say, every such railroad corporation or person operating a railroad in this territory shall pay to said treasurer each year, for the first five years after said railroad shall be or shall have been operated in whole or in part, two (2) per centum of such gross earnings; and for and in each and every year after the expiration of the said five years, three (3) per centum of the said gross earnings; and the payment of such per centum annually, as aforesaid, shall be and is in full of all taxation and assessments whatever upon the property aforesaid.   The said payments shall be made one-half ($\frac{1}{2}$) on or before the 15th day of February, and one-half on or before the 15th day of August, in each year; and for the purpose of ascertaining the gross earnings aforesaid an accurate account of such earnings shall be kept by said company, an abstract whereof shall be furnished by said company to the treasurer of this territory on or before the 1st day of February in each year; the truth of which ab-

stract shall be verified by the affidavits of the treasurer and secretary of said company.  And for the purpose of ascertaining the truth of such affidavits and the correctness of such abstracts full power is hereby vested in the governor of this territory, or any other person appointed by law, to examine under oath the officers and employes of said company, or other persons; and if any person so examined by the governor, or other authorized person, shall knowingly or willfully swear falsely concerning the matters aforesaid, every such person is declared to have committed perjury.  And for the purpose of securing to the territory the payment of the aforesaid per centum it is hereby declared that the territory shall have a lien upon the railroad of said company, and upon all property, estate, and effects of said company whatsoever, personal, real, or mixed.  And the lien hereby secured to the territory shall have and take precedence of all demands, decrees, and judgments against said company.

"'Sec. 2. (*Where Company shall Fail to Make Return.*)  If any railroad company in this territory shall fail to make return of its gross earnings as aforesaid, or of any part thereof, at the time and manner provided by law, and such default shall continue during the period of thirty (30) days, such company shall be subject to a penalty in an amount equal to twenty-five (25) per cent. of the tax imposed upon such company by this act; and the treasurer of the territory shall forthwith ascertain the amount of such tax justly due from such company, as nearly as may be, from such evidence as may be available, and shall thereupon collect such tax as so ascertained, together with the said penalty thereon.  The amount of tax ascertained by the territorial treasurer, as in this section provided, shall, together with the said penalty thereon, be by him entered in the books of his office; and such entry, when so made, shall stand in the place of the report required by law to be made by such company, and shall in all courts within this territory be evidence of the amount of such tax and penalty, and of the other facts stated therein, in pursuance of this act.

" ' Sec. 3. (*Neglect to Pay Taxes.*)  In case any railroad com-

J

pany shall fail or neglect to pay the taxes reported by it to be-
due, in pursuance of this act, for the period of thirty (30) days-
after the same shall have become due by the terms thereof, in
such case there shall be added to the amount of such tax ten-
(10) per centum thereof as a penalty for such failure or neglect-
to pay.

" 'Sec. 4. (*Territorial Treasurer to Distrain*.) At any time
after the expiration of the period of thirty (30) days after any-
tax has become due and payable under the provisions of this act,
the territorial treasurer, or his deputy, shall distrain sufficient-
goods, chattels, or other movable property, if found within this,
territory, to pay the taxes or per centum due from such corpo--
ration, together with the penalty thereon herein provided, and
shall immediately advertise the sale of the same in at least three
newspapers published within this territory, stating the time when
and the place where such property shall be sold. Such sales-
shall take place at some point on the railroad of such delinquent-
company, and at least four (4) weeks' notice of the time and-
place of such sale shall be given. Such delinquent company,-
its successors and assigns, may pay any such taxes and penalty-
at any time before the sale of property distrained, as herein pro--
vided; and thereupon further proceedings in connection with-
such distress shall cease, and the property distrained be sur-
rendered to the owner thereof.'

"IV. The total gross earnings of the said plaintiff for the year
1886 on the business of said railroads were $2,654,756.31, dis--
tributed as follows, to-wit: On the Northern Pacific Railroad,
$2,309,549.25; on the Northern Pacific, Fergus & Black Hills-
Railroad, $34,327.13; on the Fargo & Southwestern Railroad,
$192,594.47; on the Jamestown & Northern Railroad, $69,--
129.97; on the Sanborn, Cooperstown & Turtle Mountain Rail--
road, $29,936.36; and on the James River Valley Railroad,
$19,213.62. Said total gross earnings, to-wit, said sum of
$2,654,756.31, were composed and made up of earnings of said
plaintiff on interstate business and commerce; that is to say,-
on business and commerce originating or beginning without said-

territory, or terminating without said territory, and earnings of said plaintiff on business that was not interstate business or commerce, but was strictly local to said territory; that is to say, on business or transportation of persons and freight which originated or began at some point or points within said territory, and terminated or ended at some point or points within said territory. The part or portion of said total gross earnings, to-wit, of the sum of $2,654,756.31, which said plaintiff earned for and upon business or transportation of persons and property, or otherwise, which originated and began within said territory, and terminated and ended within said territory, did not exceed the sum of $400,000, and was approximately about as follows, to-wit: On the Northern Pacific Railroad, $346,432.38; on the Northern Pacific, Fergus & Black Hills Railroad, $5,149.07; on the Fargo & Southwestern Railroad, $28,889.17; on the Jamestown & Northern Railroad, $10,369.49; on the Sanborn, Cooperstown & Turtle Mountain Railroad, $4,490.52; and on the James River Railroad, $2,882.79. The remaining portion of said total gross earnings, to-wit, about the sum of $2,259,425.68, were earnings which were earned by plaintiff on business that was interstate commerce; that is to say, on business or transportation of persons and property between points situated wholly without said territory; or points without and points within said territory; or points within and points without said territory.

"Heretofore, to-wit, on the 5th day of March, A. D. 1887, said plaintiff duly paid to the defendant, treasurer as aforesaid, the sum of $38,095.31 as and for taxes on its earnings under the terms and provisions of the act last mentioned.

"V. Heretofore, to-wit, on the 15th day of August, 1887, the said defendant, treasurer as aforesaid, demanded of said plaintiff the sum of $38,095.31, which he, the said defendant, pretended was due and payable by virtue of said act; but thereupon said plaintiff refused to pay the said sum, or any part thereof.

"VI. Afterwards, to-wit, on November 4, 1887, the said defendant, treasurer as aforesaid, at Fargo, Cass county, Dak.,

did wrongfully and unlawfully levy a pretended distress upon, and seized and took possession of, certain personal property then and there owned by and in the possession of said plaintiff, to-wit: One Mogul locomotive, No. 147; one Mogul locomotive, No. 79; one Standard locomotive, No. 347; one Standard locomotive, No. 185; one Mogul switch-engine, No. 299; one Standard engine, No. 159; one Standard engine, No. 118; one switch-engine, No. 52,—of great value, to-wit, of the value of $64,000.00,—pursuant to the provisions of said act, and to satisfy the pretended taxes aforesaid, to-wit, the sum of $38,-095.31, together with a certain pretended penalty thereon of $3,809.53; and has ever since remained in the possession of the same.

"VII. Afterwards, to-wit, on November 4, 1887, the said defendant, treasurer as aforesaid, caused an advertisement to be, and the same was, published in three newspapers published in said territory, that he, the said defendant, would sell said personal property at the court-house in Fargo, Dak., on the 6th day of December, A. D. 1887, at 10 o'clock A. M., to satisfy said pretended tax and penalty as provided in said section 4 of said act.

"VIII. That, unless restrained by the order of this court, said defendant will, as plaintiff is informed and believes, sell said property at the time and place mentioned in said advertisement, to-wit, on December 6, A. D. 1887, at 10 o'clock A. M., at the court-house in Fargo, Dak., to satisfy said pretended tax and penalty.

"IX. That said plaintiff is a common carrier of goods and passengers for hire in said territory, and the said personal property, to-wit, the said engines, are essential and necessary to enable said plaintiff to carry on its' business as a common carrier, and to discharge its duties as such to the public; that, if said engines are sold as aforesaid by said defendant, said plaintiff will be deprived of the possession thereof, and will be deprived of the use thereof in its said business as a common carrier; and it will not be able to purchase or procure

other engines in their place in less time than a year, for the reason that it will have to purchase such other engines from the manufacturers of railroad locomotives and engines in the United States. And all of said manufacturers now have orders for engines which will require at least a year to fill, and on account of such pressure of business none of them will be able to furnish said plaintiff with any engines in less time than a year; by reason of which the sale of said engines will inflict great and irreparable injury on the business of said plaintiff, and will cause said plaintiff great pecuniary loss, the exact amount of which cannot be computed, and will to a great extent prevent said plaintiff from engaging in its said business, and will destroy said business in part, and will cause said plaintiff great and irreparable damage, which cannot be estimated and determined in an action at law.

"X. Said defendant, James W. Raymond, treasurer as aforesaid, is furthermore financially irresponsible, and is not the owner of property and effects equal in value to the value of said engines or of said pretended tax and penalty, so that, if said engines are sold as aforesaid, said plaintiff will not be able to recover the value thereof from said defendant, and will not be able to collect any judgment therefor it may obtain against said defendant, and said defendant will be wholly unable to pay any such judgment; and if said plaintiff should pay said pretended taxes and penalty to said defendant, and should afterwards bring an action against said defendant to recover back the same, and should in any such action obtain a judgment against said defendant for the amount of said pretended tax and penalty, said defendant will be unable to pay such judgment by reason of said defendant's financial irresponsibility as aforesaid, and said plaintiff would not be able to collect the amount of such judgment, or satisfy the same by execution or otherwise; but, on the contrary, the amount of said pretended tax and penalty would be wholly and forever lost to said plaintiff.

"XI. That by reason of the premises said plaintiff has no adequate or complete remedy at law.

"Wherefore said plaintiff prays that said pretended tax and penalty, and the whole thereof, be adjudged null and void; and that said defendant, James W. Raymond, treasurer as aforesaid, his deputy and deputies, and his successor and successors in office, be perpetually restrained and enjoined from selling, or attempting to sell, said personal property, or any part thereof, to satisfy said pretended tax and penalty, or any portion thereof; that the said defendant and his deputy and deputies, and his successor and successors in office, be restrained and enjoined from selling, or attempting to sell, said property, or any part thereof, to satisfy said pretended tax and penalty, or any portion thereof, during the pendency of this suit; that said plaintiff have judgment against said defendant for the possession of said personal property, besides its costs and disbursements in this action; and that said plaintiff have such other and further relief as may be equitable and just in the premises."

## "Demurrer to Amended Complaint.

"And now comes the defendant in the above-entitled action, and demurs to the plaintiff's amended complaint herein, and for cause of demurrer alleges:

"That said complaint does not state facts sufficient to constitute a cause of action.

"Wherefore defendant prays judgment that this action be dismissed, and for his costs and disbursements herein.

"Dated at Fargo, Dakota, this 9th day of April, A. D. 1888."

## "Order Overruling Demurrer.

"This action having been brought to trial on the issue of law joined herein by the defendant's demurrer to the amended complaint, after hearing Charles F. Templeton, Esq., attorney general, in support of the demurrer, and Messrs. Ball, Wallin & Smith in opposition:

"Ordered, that the said demurrer be overruled; and, the defendant's said attorney having in open court elected not to an-

swer, and to stand upon his demurrer, the court directs that judgment be entered in favor of the plaintiff and against the defendant herein for the relief demanded in the amended complaint, with plaintiff's costs and disbursements.

"Done in open court, this 10th day of April, A. D. 1888.

"WM. B. McCONNELL, Judge."

## "JUDGMENT.

"The order of this court having been duly made and filed, whereby the defendant's demurrer to the amended complaint was overruled, and whereby the court, after the defendant, by his counsel, had in open court elected to stand on his demurrer, directed judgment herein to be entered in favor of the plaintiff and against the defendant for the relief demanded in the complaint, together with plaintiff's costs and disbursements herein: Now, therefore, on motion of the plaintiff's attorneys, it is adjudged as follows:

"*First.* That there is no tax due for the year 1886 from the plaintiff to the territory of Dakota, under the act of the territorial legislature known as the 'Gross Earnings Law,' and referred to and set out in the amended complaint; and that such tax had been fully paid long prior to the seizure by the defendant of the personal property described in the complaint.

"*Second.* It is further adjudged that said defendant and his successor or successors in office be restrained and perpetually enjoined from selling or attempting to sell the whole or any part of the personal property described in the complaint for the tax or penalty thereon mentioned in the complaint, or for any tax or penalty based on the gross earnings of the plaintiff for the year 1886.

"*Third.* It is further adjudged that, in so far as said act of the territorial legislature referred to and set out in the complaint assumes or pretends to impose a burden or tax upon interstate commerce, viz., a tax or burden upon gross earnings or commerce originating or beginning without said territory, or terminating without said territory, the same is unconstitutional,

null, and void; and the court therefore adjudges and orders that all taxes assessed or levied upon that part of the plaintiff's gross earnings in the year 1886 which accrued upon commerce originating or beginning without said territory, or terminating without said territory, be abated, canceled, and annulled; and the defendant and all persons whomsoever are hereby perpetually restrained from collecting or attempting to collect, claiming or attempting to claim, such taxes, as due or owing from the plaintiff to the said territory.

"*Fourth.* It is further adjudged that the plaintiff have judgment against the defendant for the possession of the personal property described in the complaint, and for its costs and disbursements in this action, taxed by consent, in open court, at five dollars.

"April 10, 1888.

"By the court,                WM. B. McCONNELL, Judge."

On the 14th day of April, A. D. 1888, the defendant served upon the plaintiff's attorneys and the clerk of the district court of Cass county a notice of appeal to this court.

"ASSIGNMENT OF ERRORS.

"Appellant says there is manifest error upon the face of the record, in this:

"1. The court erred in overruling defendant's demurrer to the amended complaint, for the reason that said amended complaint does not state facts sufficient to constitute a cause of action.

"2. The judgment entered is not authorized or supported by the facts alleged in the complaint, and admitted by the answer."

The amended complaint, the allegations of which are admitted by the demurrer, and are on this appeal to be taken as true, discloses that the gross earnings of the respondent railroad company for the year 1886 (to which the amount in controversy relates) was $2,654,756.31. That $395,330.63 of this sum rep-

resented all the gross earnings of said respondent for said year 1886, in business originating and terminating within the territory of Dakota, leaving the sum of $2,259,425.68 as the total of its gross earnings for said year, from business, namely, the transportation of persons and property between points situated wholly without this territory, or points without and points within this territory; or points within and points without this territory, and coming under the head of interstate commerce business.

It is clear, at the outset, and conceded by the attorney general for the appellant, that so much of the act entitled "An act to provide for the levy and collection of taxes upon the property of railroad companies in this territory," approved March 9, 1883, (Sess. Laws Dak. 1883, p. 211,) as provides for a tax, or the payment of a per centum in lieu thereof, upon the gross earnings of a railroad company operating in this territory, received for business,—the transportation of passengers and property,—not local, that is, not originating and ending wholly within this territory, but interstate, and therefore coming under the head of interstate commerce, is unconstitutional and void.

It is an intermeddling with, and an effort to tax, the earnings or proceeds arising from interstate commerce, and the attempted usurpation of a power which, under the constitution, is to be solely and exclusively exercised by congress. Among other cases, see *Fargo* v. *Michigan*, 121 U. S. 230–247, 7 Sup. Ct. Rep. 857; *Steam-Ship Co.* v. *Pennsylvania*, 122 U. S. 326–347, 7 Sup. Ct. Rep. 1118, and cases cited in court opinion.

Applying the principles asserted in these and other cases, and the controlling doctrine established by our country's most eminent tribunal, to the point now under review, it follows that the respondent railroad company in this case could neither be called upon nor compelled by the territory of Dakota to pay any tax, nor any sum in lieu thereof, upon its earnings or receipts in its interstate commerce business represented for said year 1886 by said admitted sum of $2,259,425.68. Such earnings are not within the taxing domain of the territory.

Holding this, we necessarily, and in legal logic, reach the conclusion that the only portion of the gross earnings of the respondent for the year 1886 upon which, under said gross-earnings law, the territory could claim the per cent. in lieu of taxes, was said sum of $395,330.63, the amount of its gross earnings for business beginning and ending in the territory of Dakota, and which, for distinctness, we will term "local business" in this territory, or business not interstate.

Manifestly the gross earnings of respondent for this local business for said year 1886, as alleged in the amended complaint, did not exceed the sum of $400,000, and, following the allegation of the complaint, and the course of counsel, for convenience, we take this sum as the amount upon which the said respondent railroad company was to pay for said year 1886 the per centum of 3 per cent. provided for in said gross-earnings law, amounting to $12,000.

It must be noted that the validity or constitutionality of said gross-earnings law, in its application to the gross earnings of the respondent, for what we have denominated its "local business" in this territory, is not assailed in this appeal, and is therefore neither questioned nor passed upon by this court, which, for the purposes of this appeal, takes said act or law as it exists with respect to said local earnings; its legal force in this regard being entirely conceded by counsel for both appellant and respondent, and made the basis of their contention in this case.

The real question to be determined in deciding the case is this, namely:   Was any sum due from the respondent railroad company to the territorial treasurer, appellant,—that is, to the territory,—under the said gross-earnings law, for said year 1886, when the said property of the respondent was seized by the appellant?

The appellant claims as due and unpaid the sum of $6,000, being the one-half of the amount of three per cent. on the gross earnings of the respondent from its said local business in this territory for said year 1886.

The respondent asserts that nothing is due from it to the ap-

pellant on its said local gross earnings for said year, the whole of said 3 per cent., $12,000, having been paid by it to the territorial treasurer, the appellant, long prior to the seizure of its said property by appellant.

By the terms of said gross-earnings law the payment of the 3 per cent. is to be made, "one-half on or before the 15th day of February, and one-half on or before the 15th day of August, in each year," the per cent. for 1886 being payable in 1887.

It is alleged in said complaint, and admitted, that "on the 5th day of March, A. D. 1887, said plaintiff (respondent) duly paid to the defendant, (appellant,) treasurer as aforesaid, the sum of $38,095.31 as and for taxes on its earnings under the terms and provisions of the act last mentioned," (said gross-earnings law.)

The plaintiff (respondent) then paid to the defendant (appellant) on that date more than three times the amount due from it to said defendant, under said gross-earnings law for said year 1886.

The court is, however, asked by the attorney general for the defendant, to hold that as only one-half of the 3 per cent. for said year 1886 was due and payable at the time said sum of $38,095.31 was paid by the respondent to and received by the territorial treasurer, defendant, said payment operated only as the discharge or satisfaction of said one-half ($6,000) due on the 15th day of February, 1887, and that the remaining one-half of the 3 per cent. (another $6,000) became due and payable August 15, 1887, and has not been paid.

Such a holding would shock the conscience of equity, and is not demanded by the letter or spirit of said gross-earnings law.

The attorney general, for the defendant, (appellant,) contends that "the judgment of the court below, so far as it declares the amount due the territory August 15, 1887, 'fully paid long prior to the seizure by the defendant of the personal property described in the complaint,' is clearly erroneous. There is no allegation in the complaint that it has been paid, or any part thereof; therefore the demurrer admits no such fact. True,

there is an allegation in the complaint that plaintiff, on the 5th day of March, 1887, paid into the territorial treasury $38,095.31, but it is not alleged that it was made in payment of the amount due for any particular year, or part of a year, and the court cannot presume that it was intended to satisfy the tax which defendant is now seeking to collect."

The attorney general, however, entirely saves us from the necessity of venturing upon any presumption, violent or otherwise, and plants us upon the solid footing of fact, when he immediately informs us in his brief that "in fact the amount paid by plaintiff, March 5, 1887, was paid in satisfaction of the installment which became due February 15, 1887, and was the exact amount of such installment, as appeared by the voluntary statement made by the plaintiff."

That the said payment of $38,095.31, made by the respondent, March 5, 1887, related to the year 1886, is beyond question, and what we are to inquire and determine is this, namely: Did that payment discharge and satisfy only the installment of the 3 per cent. payable on or before February 15, 1887, and leave unpaid the remaining installment, payable on or before August 15, 1887, or did said payment of $38,095.31, (which it is conceded was more than three times the amount of the full 3 per cent. due for said year 1886,) operate as a discharge and satisfaction of the two installments, or, in other words, the whole sum due for 1886?

When a payment is required to be made on or before a fixed date, it may be made on said date or at any time prior thereto. A payment to be made on or before August 15th can assuredly be made in March prior thereto. The respondent could pay the 3 per cent. in two installments, at the precise dates named in the act for that purpose, or, waiving the full extent of the limit, could avail itself of the effect of the words of limitation, and obey the law by making the payment of the whole amount for the year in one payment, or in two payments prior to the expiration of the last date fixed by the act; the evident purpose of the gross-earnings law in this particular being to provide for

the payment of the whole amount before the expiration of August 15th, and thus fix a time or limit within which the amount due for each year should be paid.

The provision for payment in installments is not so much for the benefit of the territory as for the accommodation of the railroad company; and the party to whom, or for whose benefit, a right or privilege is given by statute, may waive or surrender that right or privilege in whole or in part if he does not thereby impair, injure, or destroy the rights or benefits conferred upon, or flowing to, another, in or from said statute or other legal or equitable source.

After an examination of the case before the court I am convinced that, without resort to presumption, or the violation of any legal principles, but, rather, as a plain extraction of fact from clearly perceptible evidence, and in accord with sound legal and equitable doctrine, we may conclude that the said payment of said sum of $38,095.31 was in satisfaction and discharge of the full amount due from the respondent railroad company to the territory under said gross-earnings law for the said year 1886.

The amount, then, claimed by the territory, and for the alleged non-payment of which the defendant, treasurer of the territory, seized the personal property of the plaintiff railroad company, had been paid prior to the date of said seizure, and before the expiration of the last date fixed or limited by the act for its payment, and at the time of said seizure nothing was due from the respondent to the territory under said gross-earnings law for said year 1886.

The demurrer was properly overruled, and the judgment for plaintiff (respondent) fully warranted by the allegations of the complaint admitted to be true by the demurrer.

The errors assigned having no substance, the judgment of the district court is affirmed.

All the justices concurring.