The J. R. WATKINS COMPANY, a foreign
corporation, Plaintiff and Respondent,

v.

Jerome VANGEN, Harry Clemens and
David Eslinger, Defendants,

Harry Clemens, Defendant and Appellant.

No. 8008.

Supreme Court of North Dakota.

Aug. 30, 1962.

Duffy & Bakken, Cooperstown, for defendant and appellant.

Nilles, Oehlert & Nilles, George A. Soule, and Timothy Q. Davies, Fargo, for plaintiff and respondent.

MORRIS, Judge.

On September 22, 1954, the plaintiff, The J. R. Watkins Company, a foreign corporation, entered into a written contract with the defendant Jerome Vangen, as purchaser, whereby the Company agreed to sell to the purchaser, at current wholesale prices, F.O.B. Winona, Minnesota, such goods and other articles manufactured or sold by the Company as the purchaser might reasonably require for sale until the first day of December, 1956, in the locality in which he was engaged or intended to engage in business. By a further and attached agreement, the defendants Harry Clemens and David Eslinger became sureties and jointly, severally and unconditionally promised, agreed and guaranteed to pay for the goods and other articles, including prepaid transportation charges thereon, at the time and place and in the manner provided in the plaintiff's agreement with the purchaser. In January, 1957, the plaintiff brought an action against the three defendants alleging sales to Vangen of $6,201.30, payments thereon of $2,030.24, and a balance due the plaintiff of $4,171.06.

The defendant Vangen defaulted under the original complaint and the court, Honorable John Sad, Judge, ordered judgment entered against him in the sum of $4,976.56. Judgment pursuant to this order was entered March 18, 1961. In the meantime and on January 13, 1958, the defendants Clemens and Eslinger admitted service on an amended complaint. Vangen was already in default and no service of the amended complaint was made on him. The amended complaint alleged the sale to Vangen of goods and merchandise in the sum of $4,396.90, a payment of $645.25, leaving a balance of $3,751.65, upon which interest was asked at the rate of 6% from November 23, 1955.

The defendants Clemens and Eslinger answered the amended complaint. They denied the execution of the agreement with the purchaser and the surety agreement but alleged that they signed an instrument of suretyship upon the request of Vangen and upon his representation that their liability was limited to $1,000, and that Vangen was acting as the agent to the plaintiff. They further alleged that the instrument, a copy of which was attached to the complaint, was void as being contrary to public policy under the provisions of Chapter 193, Session Laws N.D.1945. Service of the answer was admitted January 23, 1958. On October 23,

1959, the plaintiff served on the attorney for Clemens and Eslinger a note of issue whereon it was noted that "(Defendant Jerome Vangen in default herein; not represented by counsel.)"

On September 22, 1960, Judge Sad entered an order which in part reads as follows:

"Upon the call of the calendar at the term of court opening January 26, 1960, the defendants, Clemens and Eslinger, moved the Court for an Order requiring plaintiff to serve its amended complaint upon the defendant, Jerome Vangen. Briefs thereon were submitted by both parties.

"The court now having fully considered said matter and briefs, the files and records herein, does hereby order and direct that said plaintiff serve its amended complaint upon the principal defendant, Jerome Vangen and serve Note of Issue upon all of said defendants before bringing the case to trial."

On November 20, 1960, the plaintiff served on the attorney for Clemens and Eslinger a notice of motion and motion to vacate the order of September 22, 1960, requiring an amended complaint to be served on Vangen. The motion was noticed for hearing on November 29, 1960, at 2:30 P.M., but was never heard. However, the court on March 1, 1961, issued the following memorandum decision:

"In this matter it appears that the defendant Jerome Vangen is in default in an action brought by the plaintiff against the above named defendant Jerome Vangen and sureties. This matter was before the court on a pretrial hearing at Cooperstown, and at that time the court made a ruling that the principal should be joined with the sureties in the case, and upon subsequent hearing it develops that the principal is in default in this matter, having served no answer

upon the plaintiff or made any appearance.

"The plaintiff makes a showing that the principal is outside of the state and that they are not in a position to have him make an appearance in the proceeding now before this court. The sureties have signed a guarantee making them jointly and severally liable for the default of the principal in the purchase of merchandise.

"The plaintiff has given the sureties the benefit of certain notes that were included in the original action against the principal and upon which notes the sureties are not liable.

"The court hereby makes a ruling that the plaintiff may have a default judgment against the principal in this case, together with costs and interest. The judgment against the principal shall in no way act as a prejudice against the sureties for whatever legal and valid defense they may have under their contract of guarantee.

"The plaintiff may draw up a judgment against Jerome Vangen, the principal, for the amount due under his contract for merchandise purchased by said defendant Jerome Vangen together with interest and statutory costs."

This memorandum was followed by an order for judgment and the entry of the default judgment against Vangen on March 18, 1961, as we have heretofore noted.

On August 31, 1961, the attorneys for the defendant Harry Clemens noticed a motion to file a supplemental answer and served written objections to the trial. The matter was heard September 6, 1961, but no ruling was made until after the trial. When the case was called for trial on September 13, 1961, the attorney for Clemens renewed his objections to proceeding with the trial and his motion to file a supplemental or amended answer.

Clemens objected to the trial on the ground that on September 22, 1960, the court ordered the plaintiff to serve an amended complaint upon Vangen and a note of issue upon all defendants, that a motion to vacate that order was noticed for hearing but was postponed and no further action taken and no note of issue served since the order of September 22, 1960.

■ The obligation of the appellant Clemens as surety on the agreement was direct and primary. Yerxa v. Ruthruff, 19 N.D. 13, 120 N.W. 758, 25 L.R.A.,N.S., 139, Annotated Cases 1912D 809; Bottineau County Bank v. Stafford, 49 N.D. 942, 194 N.W. 393; Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288; 50 Am.Jur., Suretyship, Section 2. Section 22–03–06, NDCC, sets forth acts and omissions which result in the exoneration of the surety. Section 22–03–08, NDCC, gives the surety the right to require a creditor to proceed against the principal, but failure to comply with the request exonerates the surety only to the extent to which he has been prejudiced. Brioschi-Minuti Co. v. Elson-Williams Construction Co., 41 N.D. 628, 172 N.W. 239, holds, in effect, that for a surety to avail himself of the defense provided by the statute, he must allege in his answer reasonable notice and demand to proceed against the principal and prejudice resulting by reason of the creditor's failure so to do.

■ In this case a judgment was entered against the principal, Vangen, on March 18, 1961, by default. At that time Vangen had left the jurisdiction of the court and refused to return. He had made no appearance as a party in the case, although he was present as a witness at the trial. An amended complaint had been served on the sureties, which demanded judgment for a lesser amount than that demanded in the original complaint and a lesser amount than that for which judgment was rendered against Vangen. The sureties were severally liable. No prejudice is shown or even claimed by the appellant Clemens to have resulted from any of the proceedings had or omitted with respect to Vangen. The court committed no prejudicial error in requiring Clemens to proceed with the trial without service of the amended complaint on Vangen against whom a judgment by default had already been entered.

After both parties had rested, the plaintiff moved for a directed verdict for the sum of $3,751.65, together with interest and costs as prayed for in the amended complaint. This motion was granted and verdict rendered in accordance with the direction of the court. Judgment was duly entered. The defendant Clemens made a timely motion for a new trial accompanied by specifications of errors of law and insufficiency of the evidence. This motion was heard and denied. Clemens appealed from the judgment and from the order of the court denying a new trial. In addition to overruling his objection to proceeding with the trial, the appellant also specifies as error the denial of a motion for leave to file a supplemental or amended answer. The denial of that motion presents the next problem for consideration.

■ The answer to the amended complaint was served January 23, 1958. The motion for leave to file a supplemental or amended answer, accompanied by a copy of the proposed supplemental answer, was noticed for hearing and heard September 6, 1961, one week before the trial. No explanation for the delay was offered. The defense sought to be interposed was entirely new and in no way suggested by anything contained in the original answer. It alleges that subsequent to the execution of the original agreement the plaintiff and the defendant Jerome Vangen entered into a different agreement whereby the plaintiff would sell to Vangen mineral feed or feed supplement to be sold by Vangen who would take notes therefor, that the notes were to be discounted at the Winona National & Savings Bank, and the proceeds paid seventy percent to the plaintiff and

thirty percent to Vangen. It is further alleged that under the original agreement Vangen was to be paid only sixty percent of collections and that the subsequent agreement made without the consent of Clemens was an alteration of the original agreement.

We bear in mind that under the original agreement Vangen was the purchaser who agreed to pay the company its current wholesale prices for goods and other articles sold to him. He agreed to remit to the company each week

"at least sixty per cent (60%) of the amount received by him from his cash sales, and from his collections on sales previously made, at the time and in the manner and in accordance with the provisions of the weekly record blanks of the Company to be furnished to him; and, at the expiration or termination of this agreement, to pay the whole amount therefor then remaining unpaid; * * *."

Vangen was not a salesman on commission or on salary. The prices at which the goods were to be sold by Vangen were not provided for in the contract nor does it vest in the plaintiff the power to fix such prices. The evidence shows that Vangen was free to determine the prices at which he would sell, although the company did suggest retail prices.

When the proposed amendment is read in the light of the provisions of the agreement, it does not appear to set forth facts showing that the agreement was altered or the liability of the sureties changed in any manner by the discount arrangement with the Winona National & Savings Bank. The liability of the principal and the sureties to pay for the goods purchased by Vangen remained unchanged. Sales were not restricted to cash. If the status of Vangen as a debtor was affected at all, the effect of the payment of seventy percent of the proceeds of the discounted notes to the plaintiff was favorable to the sureties for that part of the proceeds was applied on the purchaser's obligation to the company.

Amended and supplemental pleadings may be made under Rule 15, N.D.R. Civ.P. Rule 15(a) in part provides:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the action has not been placed upon the trial calendar, he may so amend it at any time within twenty days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

This provision superseded Section 28–0737, NDRC 1943. In deciding a case under that statute this court said:

"Permitting or refusing amendments to the answer, setting up new defenses, is largely discretionary with the trial court. The discretion of the trial court in this regard will not be disturbed on appeal except in case of evident abuse." Continental Supply Company v. Syndicate Trust Company, 52 N.D. 209, 202 N.W. 404.

More recently we held, in L. W. Wentzel Implement Co. v. State Finance Co., N.D., 63 N.W.2d 525, that the propriety of granting an amendment rests within the sound discretion of the trial court and will not be reviewed except where an abuse of discretion has been shown. In adopting Rule 15 in lieu of the statute we made no major change in the law with respect to the amendment of pleadings by leave of court. Our rule is the same as Rule 15(a) of the Federal Rules of Practice. It is also the holding of federal courts that the trial court is vested with a sound discretion in granting or refusing leave to amend a pleading. Federal Practice & Procedure, Barron and Holtzoff, Rules Edition, Section 445. While the rule prescribes no time for amendments by leave of court, the matter of timeliness is also largely within the

court's discretion. Federal Practice & Procedure, Barron and Holtzoff, Rules Edition, Section 446. When we consider the brief and vague wording of the proposed amended answer, its doubtful statement of any defense under the statute, and the lapse of three years and nine months from the time of the service of the original answer, we cannot say that the trial court abused his discretion in denying the motion to amend.

■ The defendant Clemens, previous to and at the time of the beginning of the trial, objected to proceeding on the ground that the plaintiff was a foreign corporation and had not obtained the certificate of authority to do business in the State prescribed by Section 10-1735, NDRC 1943, which was the law in effect at the time the action was commenced. The defendant's objection sought in effect to interpose a defense which must be pleaded and cannot be raised by objection. Brioschi-Minuti Co. v. Elson-Williams Construction Co., 41 N. D. 628, 172 N.W. 239; Rule 9(a), N.D.R. Civ.P. The trial court did not err in overruling this objection to proceeding with the trial.

The instrument signed by the sureties appears on the same sheet of paper as, and at the bottom of, the agreement signed by Vangen. It recites that:

"In consideration of the execution of the foregoing agreement by The J. R. Watkins Company, which we have read, or heard read, and fully understand and hereby agree and assent to, and its promise to sell, and the sale and delivery by it, to the Purchaser, as vendee, of goods and other articles, as therein provided, we, the undersigned sureties, hereby separately and severally expressly waive the following notice and rights, to-wit: notice to us of acceptance of this undertaking, notice to us of any right to withdraw from this undertaking, notice to us of default or non-payment by Purchaser, the furnishing to us by the Company of a copy

of this undertaking and of any monthly or other statement of debit or credit items or balances between the Company and Purchaser arising under the foregoing agreement, any right of withdrawal from this undertaking at any time without incurring liability for the indebtedness of Purchaser existing under the foregoing agreement at the time of withdrawal, and action against Purchaser by notice from us to the Company under requirement of any statute; and we jointly, severally and unconditionally promise, agree and guarantee to pay for said goods and other articles, and the prepaid transportation charges thereon, at the time and place, and in the manner in said agreement provided."

Paragraph 6 of the agreement states:

"The Purchaser shall have no power or authority to make any statement or representation, or to incur any debt, obligation, or liability of any kind whatsoever, in the name of, or for, or on account of the Company."

Paragraph 9 further states:

"It is also mutually agreed that this is the complete, entire and only agreement between the parties, and that it shall not be varied, changed, or modified in any respect except in writing executed by the Purchaser and by an officer of the Company; and that either of the parties hereto may terminate this agreement at any time, if desired, by giving the other party notice thereof in writing by mail."

The answer sets forth as a defense that the sureties did sign an instrument of suretyship or guarantee for Vangen at his request and upon his representation that their liability was limited to $1,000, that neither of the answering defendants read the instrument but signed it in reliance upon the representations of Vangen, and that in securing their signatures Vangen was acting pursuant to instructions from the plain-

tiff and its agents, and was the agent of the plaintiff in making the representations and securing the signatures. The appellant specifies as errors the sustaining of objections to testimony and to offers of proof tending to support this defense.

After Clemens had testified that he signed the instrument attached to the agreement that was brought to him by Vangen, he was asked whether he had read it and what Vangen had told him. Objections to these questions were sustained. Counsel for Clemens then made this offer of proof:

"* * * the defendant offers to prove by the testimony of Harry Clemens that he did not read Plaintiff's Exhibit 5 for the reason that he was informed by said Jerome Vangen that the liability of the sureties under said instrument was limited to $1,000.00 and that he relied upon said statement; * * *."

In connection with the same subject Vangen testified that he secured the signature of Clemens and that he got the paper from the field manager of the plaintiff at Valley City. When he was asked as to his conversation with the field manager the plaintiff objected on the ground that the testimony called for was hearsay, not competent, irrelevant, and an attempt to bring in a conversation that had no bearing on constituting Vangen an agent of the company in view of the limitations provided by paragraphs 6 and 9 of the agreement, above quoted, limiting the authority of Vangen.

The court sustained the objections to the proffered testimony, whereupon the attorney for Clemens made an offer to prove by the witness Vangen:

"* * * that the paper, Plaintiff's Exhibit 5, was delivered to said Jerome Vangen by field manager of the company, one Marvin Fields, located at Valley City, North Dakota and it was explained to said Jerome Vangen that the liability of the sureties under this contract would not exceed $1,000.00. That said Marvin Fields also directed said Jerome Vangen to secure the signature of Harry Clemens and David Eslinger to said Plaintiff's Exhibit 5. That Jerome Vangen went to the Harry Clemens home and told Mr. Clemens that the liability of the two sureties under this agreement would not exceed $1,000.00. That he did not need to read it and Mr. Clemens did not read said exhibit before signing the same."

The ultimate question here is whether the court erred in refusing to permit Vangen and Clemens to testify that Clemens did not read the instrument that he signed at the request of Vangen because Vangen told him that the liability of the sureties was limited to $1,000. Fraud was not pleaded as a defense. See Rule 8(c), N.D.R.Civ.P., pertaining to the necessity of pleading affirmative defenses. Apparently the purpose of defendant's pleading was to limit the sureties' liability to $1,000, under this defense. However, the appellant in his brief argues that the signature of Clemens as surety was obtained by a fraudulent representation of Vangen. Under either theory the question of the agency of Vangen is of prime importance. In Watkins Company v. Keeney, 52 N.D. 280, 201 N.W. 833, 37 A.L.R. 1389, this court said:

"Fraud practiced by the principal upon the surety, to which the creditor or his agent is in no sense a party, does not, as a rule, affect the liability of the surety to the creditor."

Clemens contends that Vangen was acting as an agent of the plaintiff when Vangen procured the signatures of the sureties and that, as such agent, he procured the signatures upon the misrepresentation that the liability of the sureties would be limited to $1,000. According to the offer of proof, Vangen derived his authority from a "field manager" of the company. There is no evidence of the agency or authority of the

so-called field manager except the offer of proof. His identity does not otherwise appear. Neither is there other evidence supporting the claim of Vangen's agency. The agreement which he had signed as a purchaser tends to negate his agency rather than support it. Watkins Company v. Keeney, supra.

■ The acts or declarations of an alleged agent cannot be used to establish his agency in the absence of evidence tending to show the principal's knowledge of such acts or declarations and his assent to them. Although after agency has been established prima facie, the declarations and acts of an agent may be introduced to bind the principal if they are within his actual or ostensible authority. Rigler v. North Dakota Construction Co., 57 N.D. 37, 220 N.W. 441; Parker Motor Co. v. Northern Packing Co., 58 N.D. 685, 227 N.W. 226; Bratton v. Hoerr, 49 N.D. 719, 193 N.W. 308; Embden State Bank v. Schulze, 49 N.D. 777, 193 N.W. 481; Lake Grocery Co. v. Chiostri, 34 N.D. 386, 158 N.W. 998.

■ Clemens has failed to show that Vangen was the agent of the plaintiff in procuring the signatures of the sureties. He was wholly without authority to represent to the sureties that their liability was limited to $1,000. Evidence of the alleged misrepresentation by Vangen was clearly irrelevant and without foundation. The court did not err in overruling and denying the offers of proof.

■ Clemens further argues that the plaintiff by acting under the agreement and furnishing goods to Vangen ratified the act of Vangen in representing to the sureties that their liability was limited. This is a specious argument. There is no evidence that plaintiff or any of its officers or agents at any time before the agreement expired learned of the representations made by Vangen to the sureties.

"As a general rule, except in those cases where the principal intentionally assumes the responsibility without inquiry, or deliberately ratifies, having all the knowledge in respect to the act which he cares to have, any ratification of an unauthorized act or transaction of an agent must, in order to bind the principal, be shown to have been made by him with full knowledge of the material facts relative to the unauthorized transaction." Martinson v. Kershner, 32 N.D. 46, 155 N.W. 37.

The record is devoid of any evidence of ratification.

■ The appellant has cited the case of Dr. Koch Medical Tea Co. v. Poitras, 36 N.D. 144, 161 N.W. 727. The facts in that case differ materially from those before us. In that case one of the sureties was unable to read on account of having broken his glasses and the other on account of being unable to read the English language. It was held that evidence was admissible to show that the sureties signed the purported guaranty under the assumption that they were signing instead the recommendation as to honesty, sobriety and industry, printed as a separate paragraph immediately after the printed warranty. The court pointed out:

"It is not a case where one is called upon to sign an instrument of a certain nature and is sought to be held to a knowledge of all that it may reasonably contain, and that is germane to its subject. It is a case rather where one by fraud and misrepresentation of the nature of the instrument induces another to sign a totally different instrument than that which was contemplated by him."

In the case before us it is not claimed that the sureties were unable to read. They knew they were signing as sureties for Vangen. The only claim is that they thought their liability was limited to $1,000. In this case the language in Watkins Company v. Keeney, supra, is applicable:

"It is expressly provided in the contract: That Keeney 'shall have no pow-

er or authority to incur any debt, obligation or liability of any kind whatsoever in the name of or for or on account of said company.' The defendants have offered no evidence or justification for their failure to know of this provision in the contract, if they did not know of it, and, upon familiar principles, must be charged with knowledge thereof as of the time they executed the agreement. They both read English and there is no evidence that they were prevented from reading the instrument by the fraud, artifice or design of any one."

It is clear to us that the appellant was not induced to become a surety because of fraud practiced upon him by the plaintiff or any agent of the plaintiff.

■ The appellant specifies as error the overruling of his objection to the admission in evidence of exhibits offered as part of the business records of the plaintiff. The objections go to the foundation for this evidence. The appellant cites Baldwin Piano Co. v. Wylie, 63 N.D. 216, 247 N.W. 397. However, since the decision in that case the legislature has adopted The Uniform Business Records as Evidence Act, which is Section 31-08-01, NDCC. In Northwestern Improvement Co. v. Norris, N.D., 74 N.W.2d 497, we held that the purpose of the statute was to enlarge the operation of the business records exception to the hearsay evidence rule, that the statute should be liberally construed to that end, and that the ruling of the trial court on the admission or exclusion of records under the statute will not be reversed in the absence of a manifest abuse of discretion. To the same effect is State v. Ramstad, N.D., 87 N.W.2d 736. In this case it does not appear that the trial court abused his discretion in admitting in evidence the challenged exhibits and no error was committed.

The instrument signed by the sureties, which we have already quoted, contains certain waivers which Clemens contends are void as being against public policy and in violation of the provisions of Chapter 193, S.L.1945, which requires manufacturers, wholesalers and distributors operating through agents, salesmen or dealers, who are required to furnish bonds, to give the sureties on such bonds notice of acceptance, giving the surety ten days within which to withdraw from the bond, requiring monthly statements to be furnished to the sureties, and providing for the cancellation of the bond on notice by the surety. This statute is now Sections 22–01–06.1 to 22–01–06.4, NDCC.

■ It is the general rule that while one cannot waive a public statutory obligation, he may waive a statutory requirement, the purpose of which is to confer a private right or benefit. Section 1–02–28, NDCC, provides:

"Except when it is declared otherwise, the provisions of this code in respect to the rights and obligations of parties to contracts are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts. The benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy."

56 Am.Jur., Waiver, Section 7; 92 C.J.S. Waiver, p. 1066; Wellens v. Beck, N.D., 103 N.W.2d 281; Northern Pacific R. Co. v. Raymond, 5 Dak. 356, 40 N.W. 538, 1 L.R.A. 732; Black Diamond Coal Mining Co. v. Rankin, 170 Tenn. 651, 98 S.W.2d 311.

■ The waivers expressed in the instrument that the sureties signed are specific, clear, and unambiguous. In W. T. Rawleigh Medical Co. v. Laursen, 25 N.D. 63, 141 N.W. 64, 48 L.R.A.,N.S., 198, this court said:

"In their written offer, if offer it be, the guarantors expressly waived 'acceptance and all notice,' and we see no

reason why parties may not contract as they please as long as the contracts which they make are not against public policy. At any rate, we have yet to find a case where a waiver of such notice of acceptance has been held to be a nullity. On the other hand, the validity of such agreements has been constantly upheld."

In this case the agreement between the plaintiff and the principal and the suretyship instrument attached thereto are private contracts pertaining to a private obligation. The waivers are specific. The statute providing the rights that are waived makes no mention of public policy, nor does it make contrary or conflicting contractual provisions either void or voidable. It is in no sense prohibitory. It does not purport to restrict the right of contract with respect to the matters covered by the statute. These matters deal entirely with private rights conferred on the sureties for their benefit. There is no public benefit. The sureties are not persons whose disadvantage would disadvantage the public or a substantial segment thereof. If the sureties agree to forego private rights, which these rights are, their agreement to do so is not contrary to public policy. The waivers are valid and binding on the sureties.

Our extensive review of the record under the appellant's specifications of error discloses no reversible error on the part of the trial court. The plaintiff has established its claim in accordance with the allegations of the amended complaint and, as a matter of law, the evidence presents no defense. The trial court did not commit prejudicial error in directing the jury to return a verdict for the plaintiff, ordering judgment in accordance therewith, or in denying the appellant's motion for a new trial. The judgment appealed from and the order denying a new trial are affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.